IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BRANCH BANKING & TRUST COMPANY,   *

    Plaintiff,   *

vs.   *   CASE NO. 4:12-CV-138 (CDL)

GILMAN HACKEL, et al.,   *

    Defendants.   *

## O R D E R

This action arises from a loan to Defendants Gilman Hackel ("Hackel") and Robert Yarbrough ("Yarbrough") by Colonial Bank, N.A. ("Colonial"), which was secured by collateral in Columbus, Georgia. Prior to the Colonial loan, Defendant Phenix Girard Bank ("Phenix Girard") made a loan to Yarbrough that was secured by the same collateral that secured the Colonial loan. As part of the Colonial loan transaction, Phenix Girard subordinated its security interest in the collateral to Colonial's security interest. After the collapse of Colonial, Plaintiff Branch Banking & Trust ("BB&T") became the holder of the note and security deed associated with the Colonial loan. Hackel and Yarbrough have now defaulted on the loan. BB&T instituted this action to recover the amount owed by Hackel and Yarbrough on the loan and to obtain a declaration that their security interest in

the collateral property is superior to the security interest of Phenix Girard.

BB&T filed a Motion for Summary Judgment (ECF No. 27), contending that it is entitled to judgment as a matter of law on its claims.  Phenix Girard has filed a cross motion for summary judgment (ECF No. 58), contending that it has a superior interest in the collateral property.  As explained in the following discussion, BB&T's summary judgment motion is granted and Phenix Girard's motion is denied.  The Court also grants BB&T's Motion to Strike (ECF No. 64) the unsigned affidavit of Hackel.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

## I. The 2005 Transactions

Yarbrough borrowed $303,200.00 from Phenix Girard. To secure the debt, Yarbrough executed and delivered to Phenix Girard a security deed ("Phenix Security Deed") covering a Columbus, Georgia office building he owned with Hackel ("Collateral"). The Phenix Security Deed was executed and delivered on January 25, 2005, and it was recorded with the Superior Court of Muscogee County the following day.

On January 28, 2005, Hackel and Yarbrough borrowed $1,634,850.00 from Colonial. They executed and delivered to Colonial a promissory note in the amount of $1,634,850.00 ("2005 Colonial Note"). As security for the 2005 Colonial Note, they executed a security deed on January 28, 2005 covering the Collateral in favor of Colonial ("2005 Colonial Deed"). The 2005 Colonial Deed was recorded with the Superior Court of Muscogee County on February 1, 2005.

The 2005 Colonial Deed provides, in relevant part:

> This indenture secures not only the Specific Debt above described, but also renewals and extensions of same or any part thereof. Additionally, it secures all other and further indebtedness and liability of every nature, whether direct, indirect, or contingent, that Grantor (or any one or more of Grantors, if there be more than one) may now or at any time hereafter owe

3

>  to Grantee, whether as principal, maker, endorser, guarantor, indemnitor, surety or otherwise, whether individually and separately or jointly with others (and whether or not such others are parties hereto), and notwithstanding payment of said Specific Debt or surrender of any instrument evidencing same at any time (all indebtedness and monetary obligations of every nature herein contemplated and secured hereby, collectively, being sometimes herein called the "secured debt").  If any portion of the secured debt or of this indenture is held invalid for any reason, such portion shall be deemed severed, and such invalidity shall not affect the remaining portions thereof.

Pl.'s Mot. for Summ. J. Ex. B, 2005 Colonial Deed 2, ECF No. 29-2 at 3.

As part of this transaction, Phenix Girard executed a subordination agreement in favor of Colonial ("Subordination Agreement"), which was recorded with the Superior Court of Muscogee County on February 1, 2005.  The Subordination Agreement provides, in relevant part:

>  WHEREAS, [Phenix Girard] has agreed that the lien of the [2005 Colonial] Deed shall be superior to the lien of the [Phenix] Security Deed;
>
>  NOW, THEREFORE, in consideration of One Dollar ($1.00) in hand paid by [Yarbrough] to [Phenix Girard], [Phenix Girard], for itself, its successors and assigns, hereby subordinates the lien of the [Phenix] Security Deed and all indebtedness now or hereafter secured by the [Phenix] Security Deed and all of its rights, title, lien, and interest in and to the [Collateral] and the rent and profits therefrom to the [2005 Colonial] Deed and all indebtedness now or hereafter secured by the [2005 Colonial] Deed and all of the right, title, lien and interest held or hereafter held by [Colonial] in and to the [Collateral] and the rent and profits therefrom.  From and after the date hereof the [2005 Colonial] Deed

> shall be deemed to convey title to [Collateral], and the rents and profits therefrom, superior to the [Phenix] Security Deed and the indebtedness secured by the [2005 Colonial] Deed shall be deemed superior to the indebtedness secured by said [Phenix] Security Deed. Nothing contained herein or otherwise shall preclude [Phenix Girard] from demanding strict compliance by [Yarbrough] with the terms and conditions of the [Phenix] Security Deed, and the Note secured thereby, or enforcing its rights thereunder. The [Phenix] Security Deed shall remain otherwise in full force and effect, the subordination herein provided being limited in application to the Colonial Bank, N.A. loan herein above set forth.
>
> This Subordination Agreement shall be binding upon the successors and assigns of [Phenix Girard] and shall operate to the benefit of [Colonial], its successors, assigns, purchasers at foreclosure sale and purchaser pursuant to any power of sale contained in the [2005 Colonial] Deed.

Pl.'s Mot. for Summ. J. Ex. F, Subordination Agreement 2, ECF No. 29-6 at 3.

## II.  The 2008 Transactions

Hackel and Yarbrough did not pay the balance of the 2005 Colonial Note prior to its maturity date of December 27, 2007, and on February 13, 2008 they sought additional time to repay the debt to Colonial. *See* Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J [hereinafter Def.'s Resp.], Ex. 30, Intent to Apply Form, ECF No. 50-10 (requesting loan in the amount of $1,584,243.57 for purpose of "Renewal"). At the time, Hackel and Yarbrough, along with a third borrower, George Copelan, had a separate loan with Colonial with an outstanding balance of $259,522.14 ("Florida Loan"). BB&T contends that the loan was

secured by the Collateral by virtue of the "dragnet clause" in the 2005 Colonial Deed, but there is also evidence that Colonial viewed the Florida Loan as unsecured until 2008. Def.'s Resp. Ex. 22, Colonial Bank Memo (Mar. 24, 2008), ECF No. 50-9. Specifically, Colonial's records state that the "$259,522.14 *unsecured loan* to Gilman Hackel, Robert Yarbrough and George Copelan" was to be "cross-collateralized with" the 2005 loan to Hackel and Yarbrough and that Colonial requested an additional deed to secure debt on the Collateral in the amount of $259,522.14 "[i]n order to collateralize" the Florida Loan. *Id.* (emphasis added); *accord* Def.'s Res. Ex. 31, Email from M. Woody to K. Payne (Mar. 24, 2008), ECF No. 50-11 ("[W]e are cross collateralizing the unsecured loan in the amount of $259,522.00 . . . .").

On March 28, 2008, Hackel and Yarbrough executed and delivered to Colonial a promissory note in the amount of $1,584,243.57 ("2008 Colonial Note"). Pl.'s Mot. for Summ. J. Ex. C, 2008 Colonial Note 1, ECF No. 29-3 at 3. The 2008 Colonial Note states: "Payment of this Note is secured by a 1st DSD [Deed to Secure Debt] from Borrowers to Lender dated January 28, 2005." *Id.* ¶ 11. Hackel and Yarbrough also signed a business loan agreement ("Business Loan Agreement"). Def.'s Resp. Ex. 12, Business Loan Agreement, ECF No. 50-4. The Business Loan Agreement memorializes "a loan of money in the

6

principal amount" of $1,584,243.57 and states that the loan is "to be secured by a first mortgage (1st DSD) on" the Collateral. *Id.* at 1.  The Business Loan Agreement further states: "A 2nd DSD given in connection with the herein loan will also secure payment of an existing loan in the amount of $259,522.14 made by [Colonial] to Robert Yarbrough, Gilman Hackel and George Copelan with a maturity date of 01/24/09."  *Id.* at ¶ 7(c).

Hackel and Yarbrough also granted Colonial a new security deed ("2008 Colonial Deed"), which covered the Collateral. Pl.'s Mot. for Summ. J. Ex. D, 2008 Colonial Deed, ECF No. 29-4. The 2008 Colonial Deed provides:

> This Security Deed is second to and subject to that certain outstanding Security Deed from Gilman Hackel and Robert S. Yarbrough to Colonial Bank, N.A., dated January 28, 2005 and recorded in Deed Book 7760, page 36, in the office of the Clerk of the Superior Court of Muscogee County, Georgia.
>
> Grantors covenant and agree that this Security Deed shall also secure payment of an existing loan in the amount of $259,522.14 made by Grantee to Robert Yarbrough, Gilman Hackel and George Copelan having a maturity date of 1/24/09.

2008 Colonial Deed 1.  The 2008 Colonial Deed further provides:

> This indenture is not a mortgage but an absolute conveyance of said property made under the existing provisions of the Official Code of Georgia Annotated relating to conveyances of property to secure debt, the Specific Debt secured hereby being evidenced by a certain promissory note in the principal sum of $1,584,243.57 executed by Grantor, dated March 28, 2008 and payable to the order of Grantee with interest and upon terms as therein specified.  Final payment

7

>  thereon is due 02/27/2011, and said note is made a part hereof by this reference.

2008 Colonial Deed 2.[1]

Neither the 2008 Colonial Note nor the Business Loan Agreement references the 2005 Colonial Note or states that the 2008 Colonial Note is a "renewal" or "modification" of the 2005 Colonial Note.  The attorney who closed the 2008 transaction, however, stated that it was a "renewal/modification transaction of the existing Note."  Pl.'s Mot. for Summ. J. Ex. M, Flournoy Aff. ¶ 4, ECF No. 29-13.  Likewise, the Colonial loan officer responsible for the 2008 transaction stated that the 2008 transaction was a renewal of the 2005 Colonial Note.  Pl.'s Mot. for Summ. J. Ex. O, Kidd Aff. ¶ 13, ECF No. 29-16.  According to Colonial, no funds in payment of the 2005 Note were remitted to Colonial in connection with the 2008 transaction, and the loan represented by the 2005 Colonial Note was not paid with the proceeds of the 2008 Colonial Note.  Flournoy Aff. ¶ 4; Kidd Aff. ¶ 16; *see also* Hackel Answer ¶ 1, ECF No. 14 (admitting, among other things, Compl. ¶ 18, ECF No. 1, "The 2005 Colonial Note was not paid with the proceeds of the 2008 renewal, and no funds were remitted to Colonial Bank.").  Also, according to Colonial, Hackel and Yarbrough have been continuously indebted

---

[1] The attorney who closed the 2008 transaction believed that the 2008 Colonial Note was unnecessary because the 2005 Colonial Deed still applied to secure the debt, but he did not believe that the 2008 Colonial Deed nullified the 2005 Colonial Deed.  Flournoy Dep. 85:1-24, ECF No. 55.

8

to Colonial (and its successor) since the execution of the 2005 Colonial Note.  Kidd Aff. ¶¶ 15, 22 (stating that account number for the 2005 loan remained the same after the 2008 transaction and that loan account has never had a zero balance).  Phenix Girard points out that the settlement statement prepared by the closing attorney states that the "GROSS AMOUNT DUE FROM BORROWER" includes $1,584.243.57 "[s]ubject to existing loan" and that "AMOUNTS PAID BY OR IN BEHALF OF BORROWER" include $1,584.243.57 "Principal amount of new loan(s)."  Def.'s Resp. Ex. 18, Settlement Statement, ECF No. 50-8.

After the 2008 Colonial Note and 2008 Colonial Deed were executed, Hackel and Yarbrough each executed a quitclaim deed transferring his interest in the Collateral.  Hackel transferred his interest in the Collateral to 1+EY, Inc., and Yarbrough transferred his interest in the Collateral to Big Team, Inc.

### III. Transfer of Colonial's Assets to BB&T

On August 14, 2009, the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver of Colonial.  The FDIC sold certain deposits and assets of Colonial to BB&T, including the 2005 Colonial Note, the 2005 Colonial Deed, the 2008 Colonial Note, and the 2008 Colonial Deed.  BB&T owns and holds the 2005 Colonial Note, the 2005 Colonial Deed, the 2008 Colonial Note, and the 2008 Colonial Deed.

**IV.   Hackel and Yarbrough's Outstanding Debt to BB&T**

Hackel and Yarbrough's indebtedness to BB&T has matured. BB&T demanded payment from Hackel and Yarbrough, and they are now in default.  Yarbrough is also in default on his debt to Phenix Girard, which is secured by the same collateral that secures the debt to BB&T.  Hackel and Yarbrough do not dispute that they owe BB&T $1,514,349.39 in principal; interest in the amount of $241,911.92 through August 21, 2012 plus additional interest in the amount of $210.32 per day after August 21, 2012; and reimbursement for payment of property taxes on the Collateral in the amount of $98,678.61, which BB&T paid when Hackel and Yarbrough failed to pay property taxes for 2009, 2010, and 2011.

The 2005 Colonial Note contains the following relevant provision regarding attorneys' fees: "If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees.  Attorney fees shall not exceed 15 percent of the principal and interest owing."  Pl.'s Mot. for Summ. J. Ex. A, 2005 Colonial Note 2, ECF No. 29-1 at 4.  The 2008 Colonial Note also contains a provision regarding attorneys' fees: "[T]he Note Holder will have the right to be paid back by [the borrowers] for all of its costs and expenses in enforcing this Note to the extent not prohibited by

10

applicable law. These expenses include, for example, reasonable attorney's fees and costs of foreclosure." 2008 Colonial Note ¶ 6(E). Hackel and Yarbrough admitted that they owe BB&T attorneys' fees and expenses in the amount of $34,250.83. Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 35, ECF No. 40.

BB&T pointed to evidence that Hackel and Yarbrough failed to maintain insurance on the Collateral and that BB&T had to procure forced place insurance to cover the Collateral in 2011. Kidd Aff. ¶ 32. BB&T also pointed to evidence that Hackel and Yarbrough owe BB&T fees and late charges in the amount of $32,541.86, which includes the forced place insurance premiums. *Id.* ¶ 29. Hackel and Yarbrough contend that they maintained insurance on the Collateral and that it was not necessary for BB&T to obtain forced place insurance. Hackel and Yarbrough did not, however, point to any evidence that they maintained insurance coverage on the Collateral or that they provided proof of insurance to BB&T. They simply provided an unsigned affidavit stating that they maintained insurance coverage on the Collateral. Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts Attach. 1, Unsigned Hackel Aff., ECF No. 40-1. The unsigned affidavit references an exhibit, but the exhibit was not attached to the unsigned affidavit. *Id.*

Federal Rule of Civil Procedure 56(c)(4) permits parties to submit an affidavit or declaration to oppose a summary judgment motion, but the affidavit or declaration must obviously be signed by the affiant. An unsigned affidavit or declaration cannot be considered. *See, e.g., Carr v. Tatngelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). Hackel and Yarbrough received email notification from the Clerk that the affidavit was unexecuted. Nonetheless, they did not submit an executed version accompanied by the referenced exhibit, and they did not respond to BB&T's motion to strike. Therefore, BB&T's Motion to Strike the unsigned affidavit (ECF No. 64) is granted, and the Court declines to consider the unsigned affidavit.

DISCUSSION

**I.   BB&T's Summary Judgment Motion as to Hackel and Yarbrough**

Hackel and Yarbrough do not dispute that they owe BB&T $1,514,349.39 in principal; interest in the amount of $241,911.92 through August 21, 2012 plus additional interest in the amount of $210.32 per day after August 21, 2012; and $98,678.61 to reimburse BB&T for paying property taxes on the Collateral. They also did not, in their response to BB&T's statement of material facts, dispute owing BB&T attorneys' fees and expenses in the amount of $34,250.83. But in their brief, Hackel and Yarbrough contend that they are only responsible for attorneys' fees BB&T incurred in bringing its claim against

them, and they argue that they should not have to pay for attorneys' fees BB&T incurred in pursuing its declaratory judgment action against Phenix Girard. They also assert that they should not be required to reimburse BB&T for the forced place insurance premium. The Court addresses each issue in turn.

With regard to attorneys' fees, the 2005 Colonial Note provides that the Hackel and Yarbrough shall pay "all costs of the Lender in connection" with "legal proceedings . . . instituted to enforce the terms of th[e] Note." 2005 Colonial Note 2. The 2008 Colonial Note provides that "the Note Holder will have the right to be paid back by [the borrowers] for all of its costs and expenses in enforcing this Note [including] reasonable attorney's fees . . . ." 2008 Colonial Note ¶ 6(E). In this action, BB&T seeks to collect a debt by pursuing a money judgment against Hackel and Yarbrough and a declaratory judgment that its security interest is superior to Phenix Girard's. The Court is satisfied that the attorneys' fees associated with establishing the superiority of BB&T's security interest have been incurred to enforce the promissory notes. Therefore, BB&T is entitled to recover those fees under the terms of the promissory notes. The Court also observes that Hackel and Yarbrough did not, in their response to BB&T's statement of material facts, dispute owing BB&T attorneys' fees and expenses

13

in the amount of $34,250.83. Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 35, ECF No. 40. Consequently, those facts are deemed admitted. The Court finds that BB&T is entitled to recover that amount in attorneys' fees and expenses.

BB&T is also entitled to recover $32,541.86 in late charges and other fees, which includes the forced place insurance premiums. BB&T pointed to evidence that it had to procure forced place insurance for the Collateral. BB&T also has established that Hackel and Yarbrough owe BB&T a total of $32,541.86 for these premiums and for late charges and other fees. Hackel and Yarbrough offered no evidence to refute BB&T's evidence regarding the late charges and other fees. As discussed above, though they contend that they maintained insurance on the Collateral and that it was not necessary for BB&T to obtain forced place insurance, they did not point to any evidence in support of this contention. There is no evidence in the present record that they maintained insurance on the Collateral or that they provided BB&T with proof of insurance. Therefore, BB&T is entitled to $32,541.86 for late charges and other fees.

In sum, BB&T is entitled to judgment against Hackel and Yarbrough, individually and jointly as follows:

| Principal | $ 1,514,349.39 |
| --- | --- |
| Interest through 8/21/2012 | $ 241,911.92 |
| Interest 8/22/2012 to date | $ 84,969.28 |
| Property Tax for 2009, 2010, 2011 | $ 98,678.61 |
| Attorneys' Fees | $ 34,250.83 |
| Late Charges and Other Fees | $ 32,541.86 |
| **TOTAL** | **$2,006,701.89** |

**II. Summary Judgment Motions Regarding Superiority of Liens**

The remaining question for the Court is whether the evidence demonstrates as a matter of law which bank has a superior security interest in the Collateral. The Court agrees with the parties that this issue can be decided as a matter of law because its resolution requires interpretation of the relevant unambiguous legal agreements and depends on facts that are largely undisputed.

BB&T contends that the 2005 Subordination Agreement contemplated that future renewals of the 2005 Loan would be secured by the 2005 Security Deed and subject to the 2005 Subordination Agreement. It argues that the 2008 transaction was a renewal of the 2005 Note, and therefore, to the extent that the 2008 loan included a renewal of the 2005 Note, BB&T's interest in the Collateral is superior to Phenix Girard's interest. Phenix Girard argues that the 2008 transaction was a completely new agreement, a novation that had the legal effect of extinguishing the 2005 Subordination Agreement.

15

For a novation, there must be "(1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, [and] (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation." *Brown v. Lawrenceville Props., LLC*, 309 Ga. App. 522, 524, 710 S.E.2d 682, 684 (2011) (internal quotation marks omitted). The Court finds that the undisputed evidence fails to establish a novation. It is clear that the 2008 transaction was a renewal of the 2005 obligations with a clarification that collateral for the Florida loan would include the same property that was collateral for the 2005 loan. The evidence does not support Phenix Girard's argument that the parties intended to extinguish the 2005 subordination agreement or intended that Colonial's security interest would no longer have priority. The 2008 transaction essentially extended the time for Hackel and Yarbrough to repay their debt and changed the interest rate. The 2005 Colonial Note was not paid with proceeds of the 2008 Colonial note. It was a classic renewal transaction. The Court acknowledges that the 2008 transaction also clarified that the separate Florida loan would be secured by the same collateral that secured the 2005 Colonial loan. But this fact alone does not extinguish the subordination agreement as it relates to the renewal of the 2005 loan. The parties to the 2008 transaction

repeatedly emphasized that the 2005 Colonial Deed remained in effect. The 2008 Colonial Note states that payment of the Note is secured by a first mortgage—the 2005 Colonial Deed. 2008 Colonial Note ¶ 11. The Business Loan Agreement likewise states that the loan is to be secured by the first mortgage and that a second mortgage would secure the Florida Loan. Business Loan Agreement ¶ 7(c). Finally, the 2008 Colonial Deed states that it is "second to and subject to" the 2005 Colonial Deed. 2008 Colonial Deed 1. For all of these reasons, the Court finds that the evidence in the present record does not establish that the 2008 transaction was a novation.

Phenix Girard agreed that the lien created by the 2005 Colonial Deed would be superior to the Phenix Security Deed. Subordination Agreement 2. Given that the 2005 Colonial Deed was not extinguished by virtue of the 2008 transaction, BB&T as Colonial's successor retains its priority interest in the Collateral.[2] Therefore, BB&T is entitled to summary judgment on its declaratory judgment claim against Phenix Girard, and Phenix Girard's summary judgment motion is denied.

## CONCLUSION

For the reasons set forth above, the Court grants BB&T's summary judgment motion (ECF No. 27) and denies the summary

---

[2] The Court's ruling is limited to a finding that the 2005 Subordination Agreement covers the 2008 renewal of the 2005 loan. The Court does not rule today that the Subordination Agreement covers the Florida Loan.

judgment motion of Phenix Girard (ECF No. 58).  Accordingly, judgment shall be entered in favor of BB&T and against Gilman Hackel and Robert Yarbrough, individually and jointly, in the amount of $2,006,701.89.

The Court further orders that BB&T's security interest in the Collateral is superior to Phenix Girard's security interest as it relates to the loan represented by the 2005 Colonial Note and the 2008 renewal of that obligation.

IT IS SO ORDERED, this 30th day of September, 2013.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE